oP7

AO 106 (Rev. 5/85) Affidavit for Search Warrant

# United States District Court

Southern **DISTRICT OF** California

FILED 2008 JAN 22 AM 11: 52
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

| In the Matter of the Search of (Name, address or brief description of person or property to<br>Express Mail parcel # EB 788080985 addressed to Carlos Rodriguez, P.O. Box 486, Toabaja, Puerto Rico 00951-0486 from Miguel Rodriguez, 1451 F Street, San Diego, CA. | **APPLICATION AND AFFIDAVIT**<br><br>**FOR SEARCH WARRANT**<br><br>CASE NUMBER: **08 MJ 0194** |
|---|---|

I,      Kim A. Kelly      being duly sworn depose and say:

I am a(n)      U. S. Postal Inspector      and have reason to believe
              Official Title

that on the premises known as (name, description and/or location)
Express Mail parcel #EB 788080985 addressed to Carlos Rodriguez, P.O. Box 486, Toabaja, Puerto Rico 00951-0486 from Miguel Rodriguez, 1451 F Street, San Diego, CA

in the Southern District of California
there is now concealed property, namely (describe the person or property)
Controlled substances, materials, and documents reflecting the distribution of controlled substances through the United States Mail, including money paid for controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and contraband

in violation of Title 21 United States Code, Section(s) 841(a)(1), 843(b) and 846.
The facts to support the issuance of a Search Warrant are as follows:
See attached.

Continued on the attached sheet and made a part hereof.      X Yes     ___No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

_1-16-08_____      at     San Diego, CA
Date                                                                City and State

NITA L. STORMES
U.S. MAGISTRATE JUDGE
U.S. Magistrate Judge                                    _____
Name and Title of Judicial Officer                   Signature of Judicial Officer

## AFFIDAVIT FOR SEARCH WARRANT

I, Kim Kelly, being duly sworn hereby depose and state:

1. I am a United States Postal Inspector currently assigned to the San Diego Field Office of the Postal Inspection Service and my duties include investigating crimes against the U.S. Postal Service and the use of the mail including violations of the Drug Abuse Prevention and Control Act.

2. This affidavit is submitted in support of an application for a search warrant for the following: Express Mail parcels: EB 788080994, which weighs 24.7 pounds, and EB 788080985, which weighs 17.9 pounds. Both parcels are addressed to Carlos Rodriguez, P.O. Box 486, Toabaja, Puerto Rico 00951-0486 from Miguel Rodriguez, 1451 F Street, San Diego, CA       .

3. I have been a federal agent for 17 years and employed as a Postal Inspector since July 2007. From Sep 87-93, while employed with the Naval Criminal Investigative Service, I was assigned to investigate narcotics violations.

4. In July 2007, I received specialized training from the U.S. Postal Inspection Service in the following two areas; Investigations involving the use of the U.S. Mails to transport controlled substances and proceeds from the sale of controlled substances; and investigations involving the use of Postal Money Orders and other negotiable instruments to launder the proceeds of controlled substances transactions.

5. Based upon my overall experience, specialized training and discussions with other Postal Inspectors and narcotics agents, I know the following in summary:

    a. Individuals who regularly handle controlled substances can leave the scent of controlled substances on the currency and other items they handle. Proceeds from these sales are

1

often stored in close proximity to the controlled substances, thereby transferring the odor of the controlled substance to the monies and packaging materials. Narcotic canines are trained to alert on the scents of controlled substances. My experience has shown that occasionally a canine will not immediately alert to the presence of contraband or controlled substance. This may occur for a variety of reasons including the packaging and additional efforts by the sender to mask the scent of a controlled substance. Often the masking agent's scent weakens over time. As a result, a canine may not initially alert to a package they may alert to after a reasonable passage of time.

    b.    The Postal Inspection Service and DEA Narcotic Task Force Commercial Interdiction Team have worked aggressively to limit the use of shipping companies and the U.S. Mail for the transportation of controlled substance through these companies.

    c.    Ongoing investigations have disclosed that Express (overnight) and Priority (two day) parcel deliveries have become a method of choice by drug dealers for the transportation of contraband or the proceeds of narcotic sales.

    d.    I know that Southern California is a source region for controlled substances being mailed throughout the United States. The proceeds from these narcotic transactions are then transported via the U.S. Mails and other communication facilities back to Southern California, the source of the controlled substances.

    e.    Drug dealers prefer the U.S. Mail, (but will sometimes utilize commercial shipping companies), specifically Express Mail or Priority Mail, for the narcotic or narcotic proceeds transportation for various reasons, some of which are listed below:

        1.    Items sent via Express Mail or Priority Mail are considered to be first-class mail, therefore, cannot be examined without a Federal Search Warrant.

        2.    Express Mail is usually requested to be delivered by the next day's mail.

3. Priority Mail is usually requested to be delivered within two days of mailing.

4. Dispatch times for Express Mail are specific and are controllable by the mailer/shipper.

5. Any delay to the mail is an indication to the mailer the mail items have been possibly compromised by law enforcement agencies to obtain a search warrant.

6. While it is not always the case that a delay of Express Mail or Priority Mail is for law enforcement purposes, those involved in illegal transactions have found that the odds are against delays in deliveries of Express Mail or Priority Mail by United States Postal Service.

7. Express Mail and Priority Mail may weigh up to 70 pounds and is desired for large volume shipments.

f. Businesses are more likely to use Express Mail and Priority Mail than First-class Mail in the course of normal business and will often use an Express Mail Corporate Account Number for the billing of the mailed articles.

g. Criminals who are involved in trafficking of controlled substances and drug proceeds will often receive multiple Express Mail articles within a short time period of each other.

h. Criminals who are involved in trafficking of controlled substances and drug proceeds will often use multiple Post Office Boxes, Commercial Receiving Agencies, addresses in foreign countries, and legitimate names and addresses of persons other than their own, or occupants at the residence, in order to receive controlled substances and/or proceeds/monetary instruments at their residence under names and residences other than their own to avoid suspicion and in an effort to conceal their true identities and place of residence.

i. I also know that drug orders containing currency, checks or money orders sometimes do not contain the presence of controlled substances because persons involved in shipping often utilize packing methods and sanitation procedures to conceal the odor or controlled substances.

j. I also know from talking to U.S. Postal Service Supervisors and employees responsible for handling the mail that Express Mail is insured for up to $100 in case of loss or damage. Insurance for Priority Mail may be purchased at an additional fee. Customers are discouraged from sending U.S. currency via the U.S. Mails and are encouraged to purchase negotiable instruments as a means to send currency by the U.S. Postal Service.

6. The information in this affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience as well as information related to me by other Postal Inspectors and law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

7. On January 15, 2008, during routine interdiction activities at the Midway Processing and Distribution Facility (P&DF) in San Diego, California, Postal Inspectors became aware of two suspicious Express Mail parcels that are the subject of this affidavit. The parcels were retrieved for further investigation.

8. I became suspicious of the Express Mail parcels for the following reasons: the label was handwritten as opposed to typewritten; there were no telephone numbers listed on the label; database checks determined the sender's address was incomplete and the name Miguel

9. Rodriguez was not associated with that address; additional database checks determined although the recipient's address (post office box) is complete, Carlos Rodriguez was not associated with that address.

10. On January 15, 2007, a Knock and Talk was conducted at Unit A. 1451 F Street, San Diego, CA is an apartment building with four units, A-D. A female who identified herself as Lourdes Naranjo stated her daughters' names are Lourdes and Cynthia Rodriguez but that there is not a Miguel Rodriguez associated with her family. Lourdes Naranjo provided the cellular telephone number of Cynthia Rodriguez but did not have her address. Database inquiries as well as Lourdes Naranjo confirmed there is no Miguel Rodriguez living in Units B- D.

11. On January 16, 2008, I met with Canine Enforcement Officer (CEO) Stuart Hersey, Customs and Border Protection, and his trained narcotic detection canine, Dada, at the San Diego, California, Port of Entry. CEO Hersey and Dada conducted an exterior inspection of the subject parcels. When Dada examined the parcels described above, CEO Hersey advised that Dada did alert to the presence of the odor of controlled substances in both parcels. The qualifications of canine Dada are contained in attachment A.

12. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe controlled substances, notes and/or currency from the illegal sale and mailing of controlled substances is being concealed in the subject parcels as described above and seek the issuance of a search warrant directing the search of the article as described above and the seizure of the

13. article, any controlled substances, currency, and/or materials and documents reflecting the distribution of controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

                                            Kim Kelly
                                            Postal Inspector

Sworn to before me, and subscribed in my presence, on January 16, 2008.

                                            U. S. Magistrate Judge

Attachment (A)



U.S. Department of Homeland Security
Washington, DC 70229

U.S. Customs and
Border Protection

JUN 26 2007

TO : DIRECTOR, FIELD OPERATIONS
SAN DIEGO

FROM: Executive Director
Cargo and Conveyance Security

SUBJECT: Certification of Narcotics Detection Capability

The following canine enforcement team(s) assigned to the San Ysidro, California Port of Entry is (are) certified in the detection of heroin, cocaine, marijuana, methamphetamine, ecstasy, and hashish. These detector dogs are the property of U.S. Customs and Border Protection.

| Dog/Brand # | CBP Officer | Certification Reference # |
|---|---|---|
| Aires CF-81 | CBPO Cove | NN-0705-01 |
| Henry CF-26 | CBPO Lawson | NN-0705-02 |
| Ringo CF-07 | CBPO Bianchi | NN-0705-03 |
| Rex CF-51 | CBPO Outlaw | NN-0705-04 |
| Panther IN-08 | CBPO Castilla | NN-0705-05 |
| Rojo CE-84 | CBPO Moore | NN-0705-06 |
| Dada IN-10 | CBPO Hersey | NN-0705-07 |
| Alpha CE-86 | CBPO Tapley | NN-0705-08 |
| Tigo CF-90 | CBPO Schneider | NN-0705-09 |
| Twister CF-29 | CBPO Sloat | NN-0705-10 |
| Buro CF-49 | CBPO Schultz | NN-0705-11 |
| United U-03 | CBPO Delgado | NN-0705-12 |
| Misco CF-93 | CBPO Blanchard | NN-0705-13 |
| Cono CE-03 | CBPO Brown | NN-0705-14 |
| Arras CB-21 | CBPO Burford | NN-0705-15 |
| Fargo CB-18 | CBPO Fernandez | NN-0705-16 |
| Pepper CE-82 | CBPO Gibbs | NN-0705-17 |
| Lasso CF-56 | CBPO Gutierrez | NN-0705-18 |
| Uno U-01 | CBPO Hernandez | NN-0705-19 |
| Cajun CF-27 | CBPO Hill | NN-0705-20 |
| Balu CE-07 | CBPO Holloway | NN-0705-21 |
| Hex CE-83 | CBPO Jones | NN-0705-22 |
| Gus G-01 | CBPO Leslie | NN-0705-23 |
| Sonni IN-09 | CBPO Martinez | NN-0705-24 |
| Gus CA-89 | CBPO McCreary | NN-0705-25 |
| Charon CA-09 | CBPO McDaniel | NN-0705-26 |
| Nero CE-30 | CBPO Mitchell | NN-0705-27 |
| Aldo CE-55 | CBPO Orey | NN-0705-28 |

| Dog/Brand # | CBP Officer | Certification Reference # |
|---|---|---|
| Vito V-07 | CBPO Petrach | NN-0705-29 |
| Tex CF-54 | CBPO Phillips | NN-0705-30 |
| Valor V-05 | CBPO Randall | NN-0705-31 |
| Sherra CF-50 | CBPO Reynoso | NN-0705-32 |
| Cuervo CE-48 | CBPO Rocha | NN-0705-33 |
| Molly M-09 | CBPO Rubio | NN-0705-34 |
| Dingo CE-49 | CBPO Santiago | NN-0705-35 |
| Tono CF-03 | CBPO Schmitz | NN-0705-36 |
| Bojar CE-61 | CBPO Smith | NN-0705-37 |
| Echo CF-09 | CBPO Smithson | NN-0705-38 |
| Lisa CC-13 | CBPO Stoddard | NN-0705-39 |
| Sita CD-60 | CBPO Sugawa | NN-0705-40 |
| Lazer CC-40 | CBPO Williams | NN-0705-41 |
| Kazan IN-05 | CBPO Worley | NN-0705-42 |
| Bruno CF-83 | CBPO Carpenter | NN-0705-43 |
| Winnie CF-80 | CBPO Everett | NN-0705-44 |
| Niko CF-82 | CBPO Pagan | NN-0705-45 |

The above dog (s) are reliable in the detection of the substances indicated and can also be expected to detect other dangerous drugs due to chemical processing similarities. It is recommended that these teams be routinely used in all work environments.

This memorandum is a record that the identified canine enforcement teams have successfully passed all the CBP canine narcotic detection training tests by a level that well exceeds the preponderance of the evidence standard used in judicial proceedings. This document may be released in criminal discovery proceedings.

If any further assistance or information is required, please have a member of your staff contact Mr. Steven C. Goldfarb, Program Manager, Canine Enforcement Program at (202) 344-3969.